IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| LANA M. PAAVOLA, Individually, and as Administrator of the ESTATE OF JOEL D. PAAVOLA, deceased,<br><br>  Plaintiffs,<br>v.<br><br>UNITED STATES OF AMERICA, DISTRICT OF COLUMBIA, and HOPE VILLAGE, INC.,<br><br>  Defendants. | Civil Action No. 3:19-cv-269<br>JURY DEMAND |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
HOPE VILLAGE, INC. FOR LACK OF PERSONAL JURISDICTION**

Defendant, Hope Village, Inc. ("Hope Village"), appearing by special and limited appearance through undersigned counsel, respectfully submits this Memorandum in Support of its Motion to Dismiss the claims against it contained in the Complaint filed by Plaintiff Lana M. Paavola, individually, and as Administrator of the Estate of Joel D. Paavola, deceased, (collectively, the "Plaintiffs"). This Motion is being filed pursuant to Federal Rule of Civil Procedure 12(b)(2) on the basis that this Court lacks personal jurisdiction over Hope Village and, therefore, should dismiss the claims against it. In support of its Motion to Dismiss, Hope Village states as follows:

**FACTUAL BACKGROUND**

Hope Village is incorporated under the laws of the District of Columbia[1], is a citizen of the District of Columbia, and has its principal place of business within the District of Columbia at 2840 Langston Place, S.E., Washington, D.C. 20020. (Varone Affidavit, Exhibit 1 to Motion to Dismiss, ¶ 3.) Hope Village is privately owned and it owns and operates a community correction

---

[1] Hope Village is not and has never been incorporated under the laws of Tennessee or any other state. (Varone Affidavit, Exhibit 1 to Motion to Dismiss, ¶ 4.)

and/or residential reentry center located at 2840 Langston Place, S.E., Washington, D.C. 20020. (*Id*. at ¶ 2.) This is the only location where Hope Village provides services or otherwise conducts any business. (*Id*.)

Hope Village has no interest in and does not use, possess, own, lease, operate, or manage any real property within the State of Tennessee, nor has it ever. (*Id*. at ¶ 5.) It has never transacted business within the State of Tennessee, never contracted to supply services or things in the State of Tennessee, never done business, solicited business, engaged in any other persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered in the State of Tennessee, nor has Hope Village contracted to insure any person, property or risk located within the State of Tennessee. (*Id*. at ¶¶ 6-8.) Further, Hope Village has never met, spoken to, or entered into a contract with Lana M. Paavola or Joel D. Paavola. (*Id*. at ¶¶ 9-11.) In fact, Hope Village has no contact with the State of Tennessee, whatsoever. (*Id*. at ¶ 12.)

Additionally, the factual allegations contained in the Complaint fail to establish that Tennessee has jurisdiction over Hope Village. (*See generally*, Complaint, RE 1.) To the contrary, the allegations in the Complaint support Hope Village's position that this Court lacks personal jurisdiction over it in this case. Specifically, the Complaint states that Hope Village "is a privately owned entity that owns, leases, operates, and /or manages a halfway house facility at 2840 Langston Place, S.E., Washington, D.C." (Complaint, RE 1, ¶ 9.) It further acknowledges that Hope Village "is a resident of the District of Columbia," that Hope Village "contracted with the D.C. Department of Corrections, the CSOSA, and/or the United States government to provide halfway house services to offenders *in the District of Columbia*," and that Hope Village "may be served with process at 1015 15th St. NW, Suite 1000, Washington D.C., 20005." (*Id*.) (*emphasis* added.)

- 2 -

1337566:1:NASHVILLE

Case 3:19-cv-00269   Document 15   Filed 05/01/19   Page 2 of 11 PageID #: 56

The Complaint also describes the alleged circumstances leading up to Mr. Paavola's death.[2] It states that: on April 27, 2018, Mr. Micheli was arrested for trespassing at the White House in *Washington, D.C.*; Mr. Micheli was detained in a *D.C.* jail; Mr. Micheli was arraigned and then released to the custody of the *D.C. Department of Corrections* for placement in a "halfway house"; ultimately, Mr. Micheli checked into Hope Village (located in *D.C.*) as required by the terms of his Release Order; on May 18, 2018, Mr. Micheli failed to comply with the terms of his confinement at Hope Village; and Hope Village failed to timely notify the appropriate authorities, including the PSA (Pretrial Services Agency) and the *D.C. Department of Corrections*. (*See Id*. at ¶¶ 16, 17, 19, 22, 24) (*emphasis* added.) The Complaint further alleges that, on June 4, 2018, Mr. Micheli entered the premises at The Balance in Nashville where he attacked Mr. Joel Paavola, who died from injuries sustained during that attack. (*See Id*. at ¶ 27, 29.)

The Complaint, however, does not allege that Hope Village operates a community correction and/or residential reentry center in Tennessee or that it otherwise transacted business in Tennessee, it does not allege that Hope Village has an interest in or uses, possesses, owns, leases, operates, or manages property within the State of Tennessee, it does not allege that Hope Village drove or otherwise transported Mr. Micheli to Tennessee, it does not allege that Hope Village has ever communicated with any resident of Tennessee, it does not allege that Hope Village has ever communicated with Ms. Lana M. Paalova or Mr. Joel Paavola, it does not allege that Hope Village was required to report to any government entity in the State of Tennessee, it does not allege that Hope Village contracted to supply services or things in the State of Tennessee or that Hope Village has solicited business, engaged in any other persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered in the State of Tennessee.

---

[2] Hope Village vigorously denies any allegation of wrongdoing in this matter. However, Hope Village takes the facts alleged in the Complaint as true for the purposes of this Motion only.

All of these facts lead to one conclusion – this Court lacks personal jurisdiction over Hope Village.

## STANDARD OF REVIEW

This Motion is filed pursuant to Federal Rule of Civil Procedure 12(b)(2) on the basis that this Court lacks personal jurisdiction over Hope Village. In the context of a Rule 12(b)(2) motion based on lack of personal jurisdiction, the plaintiff bears the burden of establishing the existence of personal jurisdiction. *Taylor v. Harlan*, 2015 U.S. Dist. LEXIS 111725, *18 (M.D. Tenn. 2015) (citing *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989))). "When, as [requested] here, the Court does not conduct an evidentiary hearing and relies solely on written submissions and Declarations and Affidavits to resolve the Rule 12(b)(2) motion(s), the plaintiff need only make a prima facie showing of jurisdiction, and the court will construe the facts in a light most favorable to the non-moving party." *Taylor*, 2015 U.S. Dist. LEXIS 111725 at *18-19 (citing *Indah v. S.E.C.*, 661 F.3d 914, 920 (6th Cir. 2011)). For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## ARGUMENT

Hope Village does not have continuous and systematic contacts with the State of Tennessee. Additionally, Hope Village has not, at any time, personally availed itself of the jurisdiction of this Court and Plaintiffs' cause of action does not arise from and is not related to Hope Village's activities in the State of Tennessee. These assertions are supported by the Affidavit Jeffrey Varone, CEO of Hope Village, attached as Exhibit 1 to the Motion to Dismiss, which shows that Hope Village has not at any time had notable or consistent contacts with the State of Tennessee. Even

the Complaint is devoid of allegations that would demonstrate that Hope Village has sufficient contacts with the State of Tennessee. Accordingly, even under Tennessee's broad, long-arm statute, the facts of this case do not confer jurisdiction to this Court.

"Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-214, expands the jurisdiction of Tennessee courts to the full limit permitted by due process."[3] *Taylor*, 2015 U.S. Dist. LEXIS 111725 at *19 (citing *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 645 (Tenn. 2009)). "When a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge, and the Court need only determine whether the exercise of personal jurisdiction violates constitutional due process." *Taylor*, 2015 U.S. Dist. LEXIS 111725 at *19 (citing *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998)).

"Due process requires that a defendant have minimum contacts ... with the forum State ... such that he should reasonably anticipate being hauled into court there." *Taylor*, 2015 U.S. Dist. LEXIS 111725 at *19 (citing *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980))). The minimum

---

[3] Tenn. Code Ann. § 20-2-214(a) states in relevant part: "Persons who are nonresidents of Tennessee and residents of Tennessee who are outside of the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

    (1) The transaction of any business within the state;
    (2) Any tortious act or omission within this state;
    (3) The ownership or possession of any interest in property located within this state;
    (4) Entering into any contract of insurance, indemnity or guaranty covering any person, property or risk located within this state at the time of contracting;
    (5) Entering into a contract for services to be rendered or for materials to be furnished in this state;
    (6) *Any basis not inconsistent with the constitution of this state or of the United States*;
    (7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding the one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.

Tenn. Code Ann. § 20-2-214(b) provides that for purposes of the statute, "person" "includes corporations and all other entities which would be subject to service of process if present in this state."

Tenn. Code Ann. § 20-2-214 (*emphasis* added).

contacts requirement ensures that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *Taylor*, 2015 U.S. Dist. LEXIS 111725 at *19 (citing *International Shoe v. Washington*, 326 U.S. 310, 316 (1945); *Schneider*, 669 F.3d at 701). "Depending on the type of minimal contacts in a case, personal jurisdiction can take one of two forms: general or specific." *Taylor*, 2015 U.S. Dist. LEXIS 111725 at *19 (citing *Air Prods.*, 503 F.3d at 550); *see also*, *Third Nat'l Bank in Nashville v. Wedge Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (Courts recognize two types of personal jurisdiction: general jurisdiction and specific jurisdiction).

### A. This Court Lacks General Jurisdiction Over Hope Village.

For a state to exercise general jurisdiction over a defendant, the proof must show that the defendant maintains "continuous and systematic" contacts with the foreign state. *Int'l Shoe Co.,* 326 U.S. 310 at 317. If the defendant maintains "continuous and systematic" contacts with the forum state, general jurisdiction arises "even when the cause of action has no relation to those contacts." *Taylor*, 2015 U.S. Dist. LEXIS 111725 at *19-20 (citing *Harris v. Lloyds TSB Bank, PLC*, 281 Fed. Appx. 489, 492 (6th Cir. 2008) (citing *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005))); *see Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984).

Courts within the Sixth Circuit have considered several factors when determining whether a defendant has "continuous and systematic" contacts, including: (1) whether the defendant has a physical presence in the forum state; (2) whether the defendant solicits business in the forum state; (3) the extent to which the defendant holds itself out as doing business in the forum state through advertisements, listings, or bank accounts; and (4) the volume of business conducted in the forum state. *Taylor*, 2015 U.S. Dist. LEXIS 111725 at *20 (citing *Beightler v. Produkte Fur Die Medizin AG*, 610 F. Supp. 2d 847, 850-51 (N.D. Ohio 2009)).

Here, all of these factors weigh in favor of finding that Tennessee cannot exercise general jurisdiction over Hope Village. Hope Village does not have, and has never had, a physical presence in the State of Tennessee (Varone Affidavit, ¶¶ 2, 3); Hope Village has never transacted business within the State of Tennessee (Varone Affidavit, ¶ 6); and Hope Village has never done business, solicited business, engaged in any other persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered in the State of Tennessee (Varone Affidavit, ¶ 8).

The *only* allegation in the Complaint that even *remotely* links Hope Village to Tennessee is that a man who had checked in to Hope Village in *Washington D.C.* later traveled to Tennessee where he engaged in criminal conduct against a Tennessee resident. This allegation relates solely to the actions of Mr. Micheli and his contacts with the State of Tennessee, and it does not establish that Hope Village has continuous and systematic contacts, or any contacts at all, with the State of Tennessee. In reality, Hope Village has no contact with the State of Tennessee, whatsoever. (Varone Affidavit, ¶ 12.) Thus, Plaintiffs cannot make a prima facie showing that this Court has general jurisdiction over Hope Village.

## B. This Court Lacks Specific Jurisdiction Over Hope Village.

A non-resident defendant who does not have contacts sufficient to support general jurisdiction may still be subject to the specific jurisdiction of the forum if certain criteria are met. "Specific jurisdiction is based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." *Taylor*, 2015 U.S. Dist. LEXIS 111725 at *20 (citing *Int'l Shoe*, 326 U.S. 310; *Indah*, 661 F.3d at 920). "Specific jurisdiction exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a *defendant's contacts* with the forum." *Taylor*, 2015 U.S. Dist. LEXIS 111725 at *20 (quoting *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (citing

*Helicopteros Nacionales de Colombia*, 466 U.S. 408 at 414-15)) (internal quotations omitted) (*emphasis* added); *see Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

The Sixth Circuit has established a three-part test for determining whether the exercise of specific jurisdiction is consistent with the principles of due process. Under this test, the exercise of such jurisdiction is proper if the court finds: 1) the defendant's purposeful availment of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action arises from defendant's activities in the state; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.[4] *See Music City Metals Co. v. Jingchang Cai*, 2017 U.S. Dist. LEXIS 171696, *16-17 (M.D. Tenn. 2017) (citing *Schneider*, 669 F.3d 693, 701 (6th Cir. 2012) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968))); *See Bulso v. O'Shea*, 2017 U.S. Dist. LEXIS 19977, *4 (M.D. Tenn. 2017). "If any of the three requirements is not met, personal jurisdiction may not be invoked." *Music City Metals Co.*, 2017 U.S. Dist. LEXIS 171696 at *17 (quoting *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012)).

"While a motion to dismiss for lack of specific personal jurisdiction may be maintained based on prongs two and three of the *Mohasco* test, purposeful availment is the *sine qua non*, or absolutely indispensable, element of personal jurisdiction." *Music City Metals Co.*, 2017 U.S. Dist. LEXIS 171696 at *17 (citing *Air Prods.*, 503 F.3d 544 at 550-51). "Purposeful availment is 'something akin to a deliberate undertaking,' that is, a deliberate effort by the defendant to direct its activities toward, and to make contact with, the forum. *Taylor*, 2015 U.S. Dist. LEXIS 111725

---

[4] Because Plaintiffs cannot satisfy the first two prongs of this test, we need not analyze the third prong in detail. Nevertheless, Plaintiffs cannot satisfy this third prong. It would be unreasonable for this Court to exercise personal jurisdiction over Hope Village in light of the complete and total lack of contacts that it has with Tennessee.

- 8 -

1337566:1:NASHVILLE

Case 3:19-cv-00269　Document 15　Filed 05/01/19　Page 8 of 11 PageID #: 62

at *21 (quoting *Bridgeport Music, Inc., v. Still N The Water Pub*, 327 F.3d 472, 478 (6th Cir. 2003)). "Purposeful availment exists 'when the *defendant's contacts* with the forum state proximately result from *actions by the defendant himself* that create a substantial connection with the forum state, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being hauled into court there.'" *Id.* at *21-22 (quoting *Bridgeport Music, Inc.,* 327 F.3d 472, 478) (*emphasis* added).

Here, the facts do not support a conclusion that Hope Village purposefully availed itself of the State of Tennessee. Hope Village has no interest in and does not use, possess, own, lease, operate, or manage any real property within the State of Tennessee, nor has it ever; it has never transacted business within the State of Tennessee, never contracted to supply services or things in the State of Tennessee, never done business, solicited business, engaged in any other persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered in the State of Tennessee; Hope Village has never contracted to insure any person, property or risk located within the State of Tennessee; and Hope Village has never met, spoken to, or entered into a contract with Lana M. Paavola or Joel D. Paavola. (*Id.* at ¶¶ 5-11.) In fact, Hope Village has no contact with the State of Tennessee, whatsoever. (*Id.* at ¶ 12.)

Again, the *only* allegation in the Complaint that even *remotely* links Hope Village to Tennessee is that a man who had checked in to Hope Village in *Washington D.C.* later traveled to Tennessee where he engaged in criminal conduct against a Tennessee resident. Thus, it cannot be said that Hope Village has any relationship or connection with Tennessee, and it certainly cannot be said that Hope Village itself somehow created a relationship with Tennessee through its own contacts with Tennessee, as it does not have any contacts with Tennessee. *See Bulso v. O'Shea*, 2017 U.S. Dist. LEXIS 19977 at *6 ("The relationship between the defendant and the forum must

- 9 -

1337566:1:NASHVILLE

Case 3:19-cv-00269 Document 15 Filed 05/01/19 Page 9 of 11 PageID #: 63

arise out of contacts that the defendant himself creates with the forum state, and the analysis must look to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there.") Given the facts set forth in the Varone Affidavit and in Plaintiffs' Complaint, it is impossible to find that Hope Village "purposefully availed" itself of Tennessee. As such, Hope Village's Motion to Dismiss should be granted on the basis that Plaintiffs have failed to satisfy the first prong of the *Mohasco* test.

Additionally, Plaintiffs' cause of action cannot be found to have arisen from Hope Village's activities in the State of Tennessee, as Hope Village has not engaged in any activity within Tennessee. Even Plaintiffs' own Complaint demonstrates that each and every action (or inaction) by Hope Village was taken (or not taken) within *Washington D.C.* (*See generally*, Complaint, RE 1.) Thus, another basis to grant Hope Village's Motion to Dismiss exists.[5]

## CONCLUSION

For all of the foregoing reasons, this Court lacks both general and specific personal jurisdiction over Hope Village. An exercise of personal jurisdiction over Hope Village would offend tradition notions of fair play and substantial justice and would violate constitutional due process. As such, the Court should grant Hope Village's Motion to Dismiss it its entirety.

Respectfully Submitted,

*s/Lauren Paxton Roberts*
Lauren Paxton Roberts (Bar No. 025049)
Ashley N. Goins (Bar No. 034253)
STITES & HARBISON PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
Telephone: (615) 782-2200
Email: lauren.roberts@stites.com
Email: agoins@stites.com
*Counsel for Defendant Hope Village, Inc.*

---

[5] *Id*.

- 10 -
1337566:1:NASHVILLE
Case 3:19-cv-00269 Document 15 Filed 05/01/19 Page 10 of 11 PageID #: 64

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 1st day of May, 2019 a true and correct copy of the foregoing document was filed electronically with the Clerk's office using the CM/ECF system and was served via the method indicated upon the following:

*Served via CM/ECF only:*

| | |
|---|---|
| C.J. Gideon, Jr.<br>J. Blake Carter<br>GIDEON, COOPER & ESSARY, PLC<br>315 Deaderick Street, Suite 1100<br>Nashville, TN 37238<br>Email: cj@gideoncooper.com<br>Email: blake@gideoncooper.com<br>*Counsel for Plaintiffs* | Dean S. Atyia<br>Assistant United States Attorney<br>110 Ninth Avenue South, Suite A-961<br>Nashville, TN 37203-3870<br>Telephone: (615) 736-5151<br>Email: dean.atyai@usdoj.gov<br>*Counsel for the United States of America* |

*Served via U.S. Mail only:*

| | |
|---|---|
| The District of Columbia<br>Office of the Secretary<br>John A. Wilson Building<br>1350 Pennsylvania Ave. N.W., Ste 419<br>Washington, D.C. 20004 | The District of Columbia<br>Office of the Attorney General for the District of Columbia<br>441 4th Street N.W., Room 600-South<br>Washington, D.C. 20001 |

                *s/Lauren Paxton Roberts*
                Lauren Paxton Roberts

- 11 -
1337566:1:NASHVILLE
Case 3:19-cv-00269 Document 15 Filed 05/01/19 Page 11 of 11 PageID #: 65