IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| LANA M. PAAVOLA, individually, and as Administrator of the ESTATE OF JOEL D. PAAVOLA, deceased<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, DISTRICT OF COLUMBIA, and HOPE VILLAGE, INC.,<br><br>Defendants. | Civil Action No.: 3:19-cv-269<br><br>Jury Demand |

## RESPONSE IN OPPOSITION TO HOPE VILLAGE, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Lana Paavola, individually, on her own behalf; as Administrator of the Estate of Joel D. Paavola; and on behalf of the wrongful death beneficiaries of Joel D. Paavola, responds to Hope Village's Motion to Dismiss and Memorandum of Law in Support of its Motion, which argue this Court has no personal jurisdiction over Hope Village.

As a threshold issue, although not stated in its Motion, Hope Village's Motion to Dismiss seeks a dismissal that would necessarily be *without prejudice*.[1] Dismissal is not appropriate (given the prima facie showing of jurisdiction in the Complaint), or is premature without an opportunity for Plaintiffs to conduct jurisdictional discovery.

Sixth Circuit precedent establishes that this Court has personal jurisdiction over Hope Village. To the extent the Court determines that requisite facts are missing, this is due to conduct of the Defendant and/or the unique circumstances of this case,[2] and

---

[1] *Intera Corp. v. Henderson*, 428 F.3d 605, 621 (6th Cir. 2005).
[2] Prior to filing suit, Plaintiffs contacted the Defendants to ask questions about the circumstances of Mr. Micheli's detention, but were repeatedly stonewalled. Likewise, the criminal court process in Davidson County has resulted in an inability to communicate with Mr. Micheli. See Affidavit of Tracie Carter (Ex. 1).

1

Plaintiffs must be permitted to conduct discovery to determine whether there are sufficient minimum contacts. Plaintiffs request that Hope Village's Motion be denied, and that Plaintiff be afforded a period of forty-five (45) days to conduct written discovery and depose Hope Village's affiant. At that time, Hope Village can renew its Motion to Dismiss, Plaintiff may seek leave to Amend the Complaint,[3] and/or Plaintiffs can provide the Court with the fruits of its discovery efforts to better evaluate Hope Village's Motion.

I. Facts

Defendant's Motion omits material facts pertinent to the Court's consideration.

Prior to his arrest in D.C., Mr. Micheli was a resident of Tennessee.[4]

Hope Village operates a halfway house.[5] Hope Village earns money by incarcerating and/or detaining persons, many of whom are residents of other states,[6] pursuant to various contracts.[7] In this case, Hope Village earned money by detaining a Tennessee resident.[8] Hope Village has a history of allegations it acted negligently in detention of its residents.[9] This creates a public safety risk to residents of other states, and in at least two confirmed cases, has led to murders in locations other than the District of Columbia ("D.C.").[10] A recent report in the D.C. news confirmed that U.S.

---

[3] If the Court finds the current iteration of the Complaint is insufficient to justify jurisdictional discovery, Plaintiffs request permission to amend the Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B) or 15 (a)(2).
[4] See Affidavit of Tracie Carter (Ex. 1).
[5] Complaint, ¶9.
[6] Complaint, ¶13.
[7] Complaint, ¶9 and ¶¶52-60.
[8] Complaint, ¶22.
[9] Complaint, ¶¶52-60.
[10] Complaint, ¶13 and ¶¶27-29.

Bureau of Prisons records obtained under the Freedom of Information Act "show nearly 300 cases of escape investigated at the Hope Village halfway house since 2016."[11]

Plaintiffs allege that Mr. Micheli was arrested,[12] was ordered to be detained at Hope Village,[13] and that Hope Village negligently failed to prevent Mr. Micheli's escape.[14] Once Mr. Micheli escaped, Hope Village failed to notify the appropriate authorities and/or take appropriate steps to secure Mr. Micheli's return to the facility.[15]

Given the information Hope Village had about Mr. Micheli, it was foreseeable that Mr. Micheli would travel to Tennessee and commit a crime like Mr. Paavola's murder.[16]

These facts are sufficient to make a prima facie showing of personal jurisdiction.

## II. Standard of Law

### A. Plaintiffs' Burden

Although the plaintiff bears the initial burden of a prima facie showing of the court's personal jurisdiction,[17] a plaintiff may make this prima facie showing simply by "establishing with reasonable particularity sufficient contacts between [a defendant] and the forum state."[18] In conducting the analysis, all parties' allegations of jurisdictional facts are presumed true and all factual disputes are decided in Plaintiffs' favor.[19]

---

[11] Exhibit 3.
[12] Complaint, ¶12.
[13] Complaint, ¶22.
[14] Complaint, ¶¶52-60.
[15] *Id.*
[16] Complaint, ¶58.
[17] *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).
[18] *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).
[19] *Energy Automation Sys., Inc. v. Saxton*, 618 F. Supp. 2d 807, 811 (M.D. Tenn. 2009).

## B. Court's Options

In deciding a Rule 12(b)(2) motion, a court may select one of three options: it may (1) decide the motion on the pleadings and supporting affidavits, (2) permit discovery to aid in deciding the motion, or (3) conduct an evidentiary hearing to resolve any apparent factual disputes.[20] At any stage of the process, the court may also take judicial notice of applicable facts that would entitle the court to exercise jurisdiction.[21]

## C. Applicable Law on Personal Jurisdiction

Personal jurisdiction may be either "general" or "specific."[22]

General jurisdiction exists when a defendant's "contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction, even if the action is unrelated to the defendant's contacts with the state."[23]

An exercise of specific jurisdiction is proper where the claims in the case arise from or are related to the defendant's contacts with the forum state.[24] In the Sixth Circuit, the *Southern Machine* three-prong test guides the determination of whether specific jurisdiction exists and protects the due process rights of a defendant.[25]

The *Southern Machine* test provides:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the

---

[20] *Cunningham v. Local Lighthouse Corp.*, No. 3:16-CV-02284, 2017 WL 4053759, at *2 (M.D. Tenn. Aug. 7, 2017), report and recommendation adopted, 2017 WL 4022996 (M.D. Tenn. Sept. 13, 2017).
[21] *Energy Automation Sys., Inc. v. Saxton*, 618 F. Supp. 2d 807, 810, n. 1 (M.D. Tenn. 2009)(citing *City of Monroe Emples. Ret. Sys. v. Bridgestone Corp.*, 387 F.3d 468, 472, n. 1 (6th Cir.2004)).
[22] *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir.2002).
[23] *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005)
[24] *Id.*
[25] *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

4

defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

The law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations.[26] A court's exercise of personal jurisdiction over a nonresident defendant is appropriate only if it meets the state's long-arm statute and constitutional due process requirements.[27] Tennessee's long-arm statute has been interpreted to be "coterminous with the limits on personal jurisdiction imposed" by the Due Process Clause of the United States Constitution, and thus, "the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical."[28] The Due Process Clause of the Fifth Amendment requires that a non-resident defendant have at least "certain minimum contacts with the [state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[29]

The ultimate inquiry is whether the exercise of personal jurisdiction complies with the Due Process Clause.[30]

### III. Argument

#### A. General Jurisdiction

Plaintiffs submit the most likely avenue for this Court to exercise personal jurisdiction over Hope Village is specific jurisdiction; nonetheless, Plaintiffs request permission to conduct discovery before conceding general jurisdiction does not apply.

---

[26] *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.1994).
[27] *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005).
[28] *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993).
[29] *Servpro Intellectual Prop., Inc. v. Zerorez Franchising Sys., Inc.*, No. 3:17-CV-00699-JPM, 2018 WL 3364372, at *4 (M.D. Tenn. July 9, 2018)(citing Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003)).
[30] *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003).

Plaintiffs have no information yet regarding how many residents of Hope Village are Tennessee citizens, how Hope Village communicates with the Tennessee residents' family members (via letters, phone call, or e-mail), whether Hope Village procures supplies necessary for operation of its center from the State of Tennessee, or the extent to which its consultants utilize information from Tennessee to manage Hope Village, Inc.[31] Hope Village's general contacts with the State of Tennessee are currently unknown, but can be quickly established via written discovery and a deposition.

### B. Specific Jurisdiction

Plaintiffs have met their burden for a prima facie showing of specific jurisdiction.

Under the facts pled, and available in the record, there is sufficient evidence to establish specific jurisdiction. Applying the *Southern Machine* test, Hope Village purposefully availed itself of the privilege of causing a consequence in Tennessee (i.e. Mr. Paavola's death); the causes of action arose from Hope Village's activities (or omissions) in Tennessee (i.e. the failure to take steps to report Micheli's escape and to capture Mr. Micheli in Tennessee); and the consequences caused by Hope Village have a substantial enough connection with Tennessee to make the exercise of jurisdiction reasonable (i.e. Mr. Paavola's murder in Tennessee due to Hope Village's negligence).

#### 1. Purposeful Availment

The Sixth Court views the purposeful availment element of the Southern Machine test as "essential" to a finding of personal jurisdiction.[32] The emphasis in the purposeful availment inquiry is whether the defendant has engaged in "some overt actions

---

[31] *See*, redacted The Moss Group report, at page 21, reflecting direct contact between D.C. and the Nashville-Davidson County Sheriff to identify methods to avoid improvident releases from custody (Ex. 2).
[32] *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005)

6

connecting the defendant with the forum state."[33]  "It is the 'quality' of [the] contacts," and not their number or status, that determines whether they amount to purposeful availment.[34]  Physical presence of the defendant in the forum state is irrelevant.[35]

*Lanier v. Am. Bd. of Endodontics* is instructive.  In *Lanier*, a Michigan dentist sought certification by the American Board of Endodontics by requesting that the Board send her an application from its headquarters in Chicago, Illinois.  After a series of events, the dentist's application was denied.  The dentist filed suit against the defendants removed to the federal district court in Michigan.  Despite the fact that the Board was located in Illinois, and conducted its business in Illinois, the Court found that the purposeful availment test was satisfied because the Board's business included residents of Michigan.[36]  Here, the analysis, facially, is substantially similar – Hope Village, a private halfway house, voluntarily contracts with various agencies to provide residential reentry services, knowing full-well that many of the detainees are residents of other states.  For example, long before Mr. Paavola was murdered in Tennessee, an escapee from Hope Village murdered a young girl in the state of Maryland.[37]

It would be inconsistent with personal jurisdiction principles to permit a private halfway house to turn a profit by providing services to residents of Tennessee, without holding the business responsible in Tennessee for the consequences of its negligence.

At a minimum, discovery is appropriate to determine the number of out-of-state residents at Hope Village (and specifically the number of residents from Tennessee), whether Hope Village attempted to communicate with anyone in Tennessee regarding

---

[33] *Dean v. Motel 6 Operating*, 134 F.3d 1269, 1274 (6th Cir. 1998)
[34] *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996)
[35] *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 910 (6th Cir. 1988)
[36] *Id.* at 903–04 (6th Cir. 1988).
[37] *Smith v. Hope Vill., Inc.,* 481 F. Supp. 2d 172 (D.D.C. 2007),

Mr. Micheli's detention, or whether Hope Village communicated with anyone in Tennessee regarding Mr. Micheli's escape. If unclear as to whether Hope Village purposefully availed itself of the privilege of acting in Tennessee, discovery is proper.

### 2. Arising From

Next, the Sixth Circuit holds that the "arising from" element of the *Southern Machine* test is satisfied "when the operative facts of the controversy arise from the defendant's contacts with the state." Analyzing this second prong of the *Southern Machine* test, this Court has previously held that "physical presence is not the touchstone of personal jurisdiction," and hence, personal jurisdiction may exist over a defendant although he is not physically present in the forum if he "purposefully directs [actions] into the forum, and those [actions] form the 'heart' of the cause of action."[38]

Here, this test is easily satisfied. Plaintiffs allege that Mr. Paavola was murdered because of Hope Village's negligent failure to detain a Tennessee resident and/or its negligent failure to take appropriate steps to ensure a Tennessee resident's capture. If the Court believes there is insufficient proof at this stage, it should permit limited discovery as to Hope Village, Inc.'s contacts with Tennessee once it accepted Mr. Micheli as a client, the date of Mr. Micheli's escape, the steps taken by Hope Village, and whether any of those steps involved affirmative action in Tennessee.

### 3. Reasonableness

Finally, if the first two (2) elements of the *Southern Machine* test are satisfied, there is an inference that the last component, reasonableness, is satisfied as well.[39]

---

[38] *Intera Corp. v. Henderson*, 428 F.3d 605, 617–18 (6th Cir. 2005)
[39] *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir.1996)

8

The third prong of the *Southern Machine* test mandates that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." When considering whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, a court must consider several factors including the following: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy.[40] These factors weigh in Plaintiffs' favor.

First, with the exception of a trial, the burden on Defendant is the same regardless of whether this case is pending in Tennessee. Plaintiffs' witnesses reside in Tennessee and would be deposed in Tennessee. Defendant's witnesses presumably reside in the District of Columbia and will be deposed there. Tennessee obviously has a strong interest in this action. One of its residents, a father of five (5), was viciously murdered, due to the negligence of the Defendant. Likewise, Ms. Paavola clearly has an interest in obtaining relief. Finally, there is no other "state" with an interest in this controversy. To the extent Defendant argues the District of Columbia may appropriately exercise personal jurisdiction over Hope Village, Inc., it is not more efficient to litigate the matter there, especially given the immense publicity this case has received in the District of Columbia. If anything, it will be easier to impanel a jury in Tennessee.

---

[40] *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005)

9

Case 3:19-cv-00269   Document 22   Filed 05/14/19   Page 9 of 11 PageID #: 90

## IV. Requested Relief

Plaintiffs have made a prima facie showing to establish personal jurisdiction.

In the alternative, Plaintiffs request permission to conduct discovery to confirm there is sufficient evidence to support an exercise of personal jurisdiction by this Court. This is a reasonable approach adopted by courts faced with the same issue.[41] Plaintiffs attempted to obtain this information before filing suit, but were rebuffed by Defendants. Defendant should not be rewarded for stonewalling requests for information and simply filing a self-serving affidavit containing information that is not relevant to the case.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

 s. J. Blake Carter
**C.J. Gideon, Jr. # 006034**
**J. Blake Carter, # 030098**
315 Deaderick Street, Suite 1100
Nashville, TN  37238
(615) 254-0400

*Counsel for Plaintiffs*

---

[41] *Atlantic Pier Assocs., LLC v. Boardakan Rest. Partners*, 647 F.Supp. 2d 474 (E.D. Pa. 2009)(If, in response to a defendant's motion for lack of personal jurisdiction, a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the defendant and the forum state, plaintiff's right to conduct jurisdictional discovery should be sustained.)

# CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of May, 2019, a true and correct copy of the foregoing document was filed electronically with the Clerk's office using the CM/ECF system and was served via the method indicated upon the following:

*Served via CM/ECF only*:

Dean S. Atyia
Assistant United States Attorney
110 Ninth Avenue South, Suite A-961
Nashville, TN 37203-3870
(615) 736-5151
dean.atyai@usdoj.gov

*Counsel for the United States of America*

Lauren Paxton Roberts
Ashley N. Goins
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
(615) 782-2200
lauren.roberts@stites.com
agoins@stites.com

*Counsel for Defendant Hope Village, Inc.*

*Served via U.S. Mail only*:

Patricia A. Oxendine
Chief, Civil Litigation Division, Section I
Office of the Attorney General for
 the District of Columbia
441 4th Street, N.W., Suite 630 South
Washington, DC  20001
(202) 442-9863
patricia.oxendine@dc.gov

*Counsel for the District of Columbia*

11

Case 3:19-cv-00269   Document 22   Filed 05/14/19   Page 11 of 11 PageID #: 92